### HIBDON v. UNITED STATES.
### No. 11721.

United States Court of Appeals
Sixth Circuit.

June 2, 1953.

Richard B. Kirkpatrick, Cincinnati, Ohio (Paul Lee Hibdon, pro se, on the brief), for appellant.

James L. Roberts, Nashville, Tenn. (Dick L. Johnson, U. S. Atty., and James L. Roberts, Asst. U. S. Atty., Nashville, Tenn., on the brief), for appellee.

Before SIMONS, Chief Judge, and MARTIN and McALLISTER, Circuit Judges.

SIMONS, Chief Judge.

The substantial question presented by this appeal is whether the defendant in a criminal case may, and freely and intelligently did, waive his right to the unanimous verdict of a jury. The government supports the verdict and the sentence thereon, in reliance upon Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 and Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L. Ed. 268.

The appellant was tried to a jury for the commission of a felony. The jury retired at 12:40 P.M. and returned after twenty-seven minutes of deliberation with a report that they were unable to agree on either count of the indictment. The court, thereupon, inquired as to whether a majority verdict would be acceptable to the parties. Counsel for the appellant, one of his own choosing, after consulting with his client, consented, as did also the United States Attorney. A poll of the jury disclosed that it stood nine to three in favor of conviction on the first count and ten to two in favor of conviction on the second count. The Court then ordered a verdict of

"guilty" to be filed with the clerk and thereafter imposed a sentence of five years on each count, both sentences to run concurrently with a sentence the appellant was then serving in the federal penitentiary at Atlanta, Georgia. A motion to vacate the sentence was later denied, and this appeal followed.

The case is one of first impression. The government, relying upon the cases above cited, argues that since the defendant may waive his constitutional right to a trial by jury, waive his right to a trial by a jury of twelve and consent to a trial by a jury less in number, may also waive unanimity on the part of the jury and consent to a verdict by a majority of its members, provided only that the waiver is expressly, and clearly and intelligently given, and that such consent was here given after consultation with counsel. The appellant relies upon the Constitution, Art. 3, Sec. 2, Clause 3, and the Sixth and Seventh Amendments thereto.

Rule 31(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides: "The verdict shall be unanimous. It shall be returned by the jury to the judge in open court." Two circumstances are to be noted in respect to this rule: (1) It was promulgated sixteen years after the decision in the Patton case, (2) Rule 29(a) of the First Preliminary Draft had provided that by written stipulation of the parties, approved by the court, a verdict might be by a stated majority of the jurors. This provision was so vigorously criticized by bench and bar, as not giving sufficient protection to a defendant, that it was eliminated from the Rule which became Rule 31(a). In view of the mandatory phrasing of the Rule, the case might well be decided and reversed upon it, alone. However, the surprising insistence of the United States Attorney upon waiver, in supporting the judgment, invites a brief excursion into the history of the requirement for a unanimous verdict in criminal cases.

"The trial by jury ever has been, and I trust ever will be, looked upon as the glory of the English Law. * * * It is the most transcendent privilege which any subject can enjoy—that he cannot be affected either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbors and equals." 3 Blackstone's Commentaries, 379. "It was finally settled, in 1376, that the verdict must be unanimous," Holdsworth, History of the English Law, 318. In Thompson v. Utah, 170 U.S. 343, 18 S.Ct. 620, 622, 42 L. Ed. 1061 Mr. Justice Harlan, after pointing to the development of the jury concept in England, and that those who emigrated to this country brought with them this great privilege "as their birthright and inheritance" as a barrier to the approaches of arbitrary power, 170 U.S. said at page 353, 18 S.Ct. at page 623: "But the wise men who framed the constitution of the United States and the people who approved it were of opinion that life and liberty, when involved in criminal prosecutions, would not be adequately secured except through the unanimous verdict of twelve jurors." In American Publishing Company v. Fisher, 166 U.S. 464, 468, 17 S.Ct. 618, 619, 41 L.Ed. 1079, the Court said: "Now, unanimity was one of the peculiar and essential features of trial by jury at the common law. No authorities are needed to sustain this proposition. Whatever may be true as to legislation which changes any mere details of a jury trial, it is clear that a statute which destroys this substantial and essential feature thereof is one abridging the right. It follows, therefore, that the court erred in receiving a verdict returned by only nine jurors, the others not concurring."

In the modern era, the Supreme Court in Andres v. United States, 333 U.S. 740, 748, 68 S.Ct. 880, 884, 92 L.Ed. 1055, reaffirmed the principle of unanimity, finding it imperative not only to a verdict of "guilty" but likewise to permissible qualification of such verdict by recommendation of clemency. "In criminal cases this requirement of unanimity extends to all issues—character or degree of the crime". In Billeci v. United States, 1950, 87 U.S.App.D.C. 274, 184 F.2d 394, 403, 24 A.L.R.2d 881, the Court said: "An accused is presumed to be innocent. Guilt must be established beyond a reasonable doubt. All twelve jurors must be convinced beyond that

doubt; if only one of them fixedly has a reasonable doubt, a verdict of guilty cannot be returned."

 This all too brief review, while demonstrating the importance of *unanimity* in trials by jury, does not, of course, reach the precise question here presented nor furnish a definitive response to the argument—that if one historical requisite of such trials may be waived another essential may likewise be surrendered, an argument that requires careful consideration of the rationalization in Patton v. United States, supra. There, it was reiterated that trial by jury, as understood and applied at common law, includes all the essential elements that were recognized in this country and in England when the Constitution was adopted and that this is not open to question. These elements were: (1) That the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous. The court was called upon to consider only the first element. It cited the two provisions of the Constitution relating to juries, Art. 3, Sec. 2, Clause 3, which provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; * * *" and the Sixth Amendment which provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *." It reasoned that the provision of the Sixth Amendment deals with trial by jury in terms of privilege and since the first ten amendments and the original Constitution were substantially contemporaneous they should be construed in pari materia, and, so construed, the latter provision may be regarded as reflecting the meaning of the former so that the two provisions mean substantially the same thing and there is no conflict between them. Upon this view, the constitutional provision, in Art. 3, Sec. 2, is not jurisdictional but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so is to convert a privilege into an imperative requirement. The court reviewed the cases, both state and federal, and concluded that since Congress had vested jurisdiction in the court over crimes and offenses by a broad and comprehensive grant, and given the courts power to try every criminal case cognizable under the authority of the United States, it would be unreasonable for the court to be left powerless to give effect to waiver and itself dispose of the case. The court, therefore, has authority in the exercise of a sound discretion to accept waiver and, as a necessary corollary, to proceed to trial and determination with a reduced number or without a jury. No Act of Congress requiring that the trial of all offenses shall be by jury, the court is fully organized and competent for the transaction of business without its presence. The question is, therefore, not jurisdictional.

Even so, the court concluded with this caution, "In affirming the power of the defendant in any criminal case to waive a trial by a constitutional jury and submit to trial by a jury of less than twelve persons, or by the court, we do not mean to hold that the waiver must be put into effect at all events. * * * Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact-finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements

thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity." [281 U.S. 276, 50 S.Ct. 263].

■ We come then to a consideration of the distinction, if any, between the first and third of the recited elements of a constitutional jury. It may be said that neither is jurisdictional and both procedural. The origin of the twelve-man jury may be shrouded, in the mists of antiquity. The number is arbitrary and it may now well be recognized, as it was in the Patton case, that the interests of the public and of the accused may, in the light of changing concepts of punishment, as adequately be served by a jury somewhat less in number than twelve or by a greater number of jurors and while the right to a constitutional jury of twelve may not be denied, it may be surrendered by the intelligent act of the accused or even in some circumstances by his silence.

It must be observed, however, that the requirement of a unanimous verdict is nowhere defined in the Constitution as "a privilege to be enjoyed." It is the inescapable element of due process that has come down to us from earliest time. No federal case has been cited and none can be found by independent research that holds or even remotely suggests that it may be waived.

■ The humanitarian concept that is at the base of criminal prosecutions in Anglo-Saxon countries, and which distinguish them from those of most continental European nations, is the presumption of innocence which can only be overthrown by proof beyond a reasonable doubt. The unanimity of a verdict in a criminal case is inextricably interwoven with the required measure of proof. To sustain the validity of a verdict by less than all of the jurors is to destroy this test of proof for there cannot be a verdict supported by proof beyond a reasonable doubt if one or more jurors remain reasonably in doubt as to guilt. It would be a contradiction in terms. We are of the view that the right to a unanimous verdict cannot under any circumstances be waived, that it is of the very essence of our traditional concept of due process in criminal cases, and that the verdict in this case is a nullity because it is not the unanimous verdict of the jury as to guilt.

Rightly considered, sustaining of the waiver in the Patton case furnishes no support for sustaining a waiver in the case at bar. This would seem to be clear from the approval given by Mr. Justice Sutherland to the reasoning of the Supreme Court of Wisconsin in Hack v. State, 141 Wis. 346, 351, 352, 124 N.W. 492, 45 L.R. A.,N.S., 664: "The ancient doctrine that the accused could waive nothing was unquestionably founded upon the anxiety of the courts to see that no innocent man should be convicted. It arose in those days when the accused could not testify in his own behalf, was not furnished counsel, and was punished, if convicted, by the death penalty, or some other grievous punishment out of all proportion to the gravity of his crime. Under such circumstances it was well, perhaps, that such a rule should exist and well that every technical requirement should be insisted on, when the state demanded its need of blood. Such a course raised up a sort of a barrier which the court could utilize when a prosecution was successful which ought not to have been successful, or when a man without money, without counsel, without ability to summon witnesses, and not permitted to tell his own story, had been unjustly convicted * * *."

It is true that the harshness of punishment, both in England and in the United States, has been ameliorated. That is shown by Mr. Justice Frankfurter in the appendix to his concurring opinion in the Andres case, supra. The death penalty has, in the great majority of the states, either been abolished altogether, deprived of its mandatory characteristic, or left to the determination of the jury. But the humanitarian considerations which denied the right to waive technical defenses in an earlier day, the sense of justice as it has flowered in the modern era and the American concept of due process still prevail. It is still the anxiety of courts "to see that no innocent man should be convicted." It is still a common objective to utilize a bar-

rier "when a prosecution [is] successful which ought not to have been successful". To implement these purposes, in an earlier day, the denial of waiver, in respect to purely technical requirements of a jury trial, served. But, in resting upon the Patton case as a persuasive analogy, the United States would now, by its support of the present judgment, not maintain the arsenal of an accused's defense but very materially reduce it, by depriving him of the barriers that the law sets up against an unjust conviction, namely, a presumption of innocence incapable of being overthrown except by proof that dispels all reasonable doubt of guilt in the mind of each juror. So, the very humane considerations which led earlier to denial of the power to waive, are now in effect advanced not to protect the accused against an unjust conviction but to facilitate a verdict of guilt.

Let it be understood that what is here urged is not the validity of the merely technical requirement of a jury trial that inheres in numbers but the very basic protection of persons accused of crime that resides in our law. It need hardly be demonstrated that to secure conviction a zealous prosecutor would carry a far lighter burden of persuasion in convincing a majority of the jury than in persuading all of its members, that unjust convictions would be increased rather than reduced, and the traditional measure of proof in criminal cases completely destroyed. So considered, the true philosophy of the Patton case does not furnish us with an analogy but collides with the view that supports the assailed judgment.

But even if it be thought that this right under circumstances impossible now to foresee may be waived, we think that the consent of the appellant in the present situation was not the free and unfettered judgment of the accused. The suggestion for waiver came not from the accused or his counsel, nor even from the district attorney. It was initiated by the judge after twenty-seven minutes of jury deliberation. The accused was in prison serving another sentence, his record was bad, the evidence of guilt, we must assume, was substantial. The accused, if found guilty was still under obligation to face the court for sentence and be at the mercy of a Judge whose suggestion to him to accept a majority verdict was flouted. It is conceivable, in these circumstances, that the hazard of judicial disfavor by an impatient Judge might seem to him a serious one. His acquiescence in the Court's suggestion did, in fact, prove to be without serious detriment to him, for the sentences were made to run concurrently with the term he was already serving. They might well have been cumulative. Such as they were, however, they were still prejudicial, for it is well understood that a multiplicity of sentences impairs a prisoner's opportunities for pardon or parole.

The judgment is reversed and the case remanded for retrial in conformity herewith.