551 A.2d 156

**Timothy Jackson ALLEN**

v.

**STATE of Maryland.**

**No. 415, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 4, 1989.

538

Lawrence E. Finegan (Miles & Stockbridge, on the brief), Frederick, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Lawrence A. Dorsey, State's Atty. for Frederick County of Frederick, on the brief), for appellee.

Argued before ROSALYN B. BELL, WENNER and FISCHER, JJ.

Opinion by ROSALYN B. BELL, Judge.

After agreeing to accept a majority verdict of the jury, Timothy Jackson Allen was convicted of robbery with a deadly weapon and the use of a handgun in a crime of violence, both of which were charges stemming from the early morning robbery of the Frederick Sheraton Inn on

May 10, 1985.[1] We describe this robbery to provide a factual setting for this appeal, but for brevity's sake, we provide further and more facts only as needed for those issues reached.

Robert Preston, the Frederick Sheraton Inn night auditor, was alone in the lobby at 4:04 a.m. on May 10, 1985 when two men entered. One of the men, later identified as Allen, held a small gun which he pointed directly at Preston. Allen was wearing a wool cap, sunglasses, and a bandanna across his face. The other man brandished a knife and wore a ski mask. Preston was told to lie on the floor but got up to assist when the man with the knife could not open the cash register. The two men left with the money and Preston called the police. Preston simultaneously wrote descriptions of the two men on a blotter and described them to the police. Preston identified Allen from a photographic array. Robert Windon, the man with the knife, confessed to participating in the robbery. Pursuant to a plea agreement, Windon testified at Allen's trial identifying Allen as the man wielding the gun. Allen was sentenced to a total of 30 years. He presents the following issues on appeal:

—Did the trial court err in the procedures used in connection with Allen's agreement to accept a verdict that was not unanimous?

—Should the trial court have suppressed the photographic identification of Allen?

—Did the trial court properly refuse Allen's request for alibi and missing witness instructions?

—Were the trial court's evidentiary rulings consistent with Allen's right to a fair trial?

—Did the trial court err in denying Allen a new trial based on the weight of the evidence?

Since we shall reverse on the first issue, we reach only that and the second issue. We do so as the balance of the issues

---

1. Allen was also convicted of robbery, assault and theft; these counts were merged into the robbery with a deadly weapon conviction.

may not be reached in a new trial and, if they are, probably will not be reached in the same context.

## MAJORITY VERDICT

The jury began deliberations at appellant's trial at approximately 12:30 p.m. on January 27, 1987. At about 6:00 p.m., the trial judge advised both counsel that he had received a message from the jury. This communication, note # 1, was signed by the jury forelady, and stated:

"We are unable to reach a unanimous decision and we seem to be at an impasse. Do you have any suggestions or recommendations?"

The trial judge read note # 1 to both counsel and appellant. At defense counsel's request, the trial court read the jury what is commonly referred to as an "Allen" charge,[2] an instruction designed to encourage the jury to reach a verdict.

At approximately 7:07 p.m., the jury forelady gave the trial court another note. This note, note # 2, also signed by the jury forelady, read as follows:

"To let you know where we stand, we are 11 guilty, 1 not guilty. We could be here 3 months and he says he *will not* change his mind. We will deliberate as long as you wish, but this is what we are up against." (Emphasis in original.)

The trial judge discussed note # 2 in a meeting in chambers with both counsel, informing them only that the jury was irreparably hung. The trial judge did not, however, disclose the exact number of the vote or in whose favor it stood. Because the chambers discussion was unrecorded, we do not have the benefit of exactly what was said.

Appellant contends that his attorney asked the trial judge to reveal the numerical posture of the vote, without disclosing in whose favor it stood. The trial judge at appellant's

---

**2.** The instruction is contained within § 2.01 of the Maryland Criminal Pattern Jury Instructions (M.I.C.P.E.L.1987), entitled "Jury's Duty to Deliberate."

new trial hearing stated that, during the in-chambers conference, "[n]either [appellant's counsel] nor [appellant] made any objection to the fact that they did not have the contents of the note, meaning the count, in order to make an intelligent waiver." Except where we state to the contrary, we shall assume appellant's recollection of the in-chambers discussion to be accurate, as the State, in its brief, accepted appellant's statement of facts. We also rely on the new trial hearing, where the facts surrounding the chambers discussion were reviewed and discussed.

Defense attorney consulted with appellant, returning to chambers to inform the trial judge that appellant had decided to accept a majority verdict. The trial judge then advised counsel that he had received another jury note, note # 3, which he read to counsel, withholding nothing except the names of the six jurors who signed the note. Note # 3 is set forth below:

"Your Honor:

"It is clear to us that one of the jurors should have excused himself. He has made statements to the effect that he has significant differences with our system of justice. We are unsure how to act on this information."

Appellant discussed with his counsel the import of this note and, against his counsel's advice, stuck to his decision to accept a majority vote. The trial judge then conducted an on-the-record voir dire of appellant, making a finding that appellant knowingly and voluntarily waived his right to a unanimous verdict.

During the on-the-record colloquy, the trial judge instructed appellant that his right to a unanimous verdict was "absolute"; a right "nobody can take ... from you, to have a unanimous verdict of twelve jurors," and that by agreeing to a majority verdict appellant was "giving up that right." The trial judge inquired as to whether appellant's counsel had fully explained to appellant the ramifications of the waiver. The trial judge determined further that appellant had asked his attorney to confer with his family. Appellant's counsel indicated that he had done so and the family

felt that the decision was appellant's alone to make. The trial judge also questioned appellant's counsel as to counsel's opinion of the decision. Appellant's counsel responded:

"[APPELLANT'S COUNSEL]: Your Honor, I have advised [appellant] that in my opinion he should not make that decision. However, I do respect [appellant's] understanding of the ramifications of the issue and I of course have to respect his position.

"THE COURT: All right. Do you feel that he understands the decision that he's making at this time?

"[APPELLANT'S COUNSEL]: Yes, sir, I do.

"THE COURT: Do you feel that he's competent to make that decision?

"[APPELLANT'S COUNSEL]: Yes, sir, I do.

"THE COURT: Do you feel that that decision on his part is a free and voluntary act on his part?

"[APPELLANT'S COUNSEL]: Yes, I do."

—Waiving the Right to a Unanimous Verdict—

At common law, unanimity was an essential element of trial by jury, and the Supreme Court has held that the right to trial by jury provided by the Sixth Amendment [3] and Art. III, § 2, cl. 3 [4] of the federal constitution includes the right to a unanimous verdict in federal criminal cases. *See Johnson v. Louisiana*, 406 U.S. 356, 369–70, 92 S.Ct. 1620, 1637, 32 L.Ed.2d 152 (1972). In the companion case of *Apodaca v. Oregon*, 406 U.S. 404, 406, 92 S.Ct. 1628, 1630, 32 L.Ed.2d 184 (1972), the Supreme Court held that a state law providing that criminal defendants could be convicted by a nonunanimous verdict, as long as ten members of the

---

**3.** The Sixth Amendment of the federal constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."

**4.** This clause governs the federal court system and provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury...."

jury agreed, did not violate the Sixth Amendment applicable to the states via the Fourteenth Amendment. *Apodaca,* 404 U.S. 410–12, 92 S.Ct. 1632–34. The Supreme Court has never considered whether a criminal defendant in a federal court can constitutionally waive his right to a unanimous verdict, nor has it commented in regard to what a valid waiver would contain.

With the exception of the 11th Circuit, *see Sanchez v. United States,* 782 F.2d 928, *reh'g denied,* 788 F.2d 1570 (1986), the federal Courts of Appeal which have considered the question have held that a criminal defendant cannot waive his constitutional right to a unanimous verdict. *See United States v. Smedes,* 760 F.2d 109 (6th Cir.1985); *United States v. Pachay,* 711 F.2d 488 (2d Cir.1983); *United States v. Morris,* 612 F.2d 483 (10th Cir.1979); *Uni States v. Lopez,* 581 F.2d 1338 (9th Cir.1978); *United Stu... .o v. Scalzitti,* 578 F.2d 507 (3d Cir.1978); *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977).[5]

In *State v. McKay,* 280 Md. 558, 559, 375 A.2d 228 (1977), the Court of Appeals was faced with the question of whether waiver of a defendant's right to a unanimous verdict was prohibited by the Maryland Declaration of Rights.[6] The Court held that a defendant may waive unanimity of verdict "provided not only that the court and the prosecution consent, but also that the waiver by the defendant conforms strictly with applicable constitutional standards." *McKay,* 280 Md. at 572, 375 A.2d 228. Important to the Court's holding in *McKay* was that, because the rule of unanimity existed primarily to benefit a defendant, a defendant ought to be able to waive it if he competently and intelligently chooses to do so. The Court in *McKay,* 280 Md. at 569, 375

**5.** Some of these decisions are grounded on Fed.R.Crim.P. 31(a), which provides that "[t]he verdict shall be unanimous."

**6.** Article 21 of the Maryland Declaration of Rights provides:
"That in all criminal prosecutions, every man hath a right ... to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

A.2d 228, pointed out that a defendant could waive other similar rights,[7] and that there was no support for an interpretation of the Maryland Constitution "that would make jury unanimity an imperative requirement as opposed to a right which can be waived." Indeed, a defendant may waive *completely* his or her right to a jury trial. *State v. Zimmerman*, 261 Md. 11, 14–19, 273 A.2d 156 (1971).

Because the right to a unanimous verdict, however, is a "fundamental constitutional right guaranteed the defendant in a criminal case," *McKay*, 280 Md. at 572, 375 A.2d 228, he may forgo this right only if, upon consideration of the particular facts and circumstances in each case, he "competently and intelligently" decides to waive the right. *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938). In *McKay*, the Court held the defendant's waiver was invalid because of his obvious misunderstanding of his rights on retrial. The on-the-record colloquy in *McKay* showed that the defendant thought that, if he did not accept a majority verdict on a particular count, he would be retried on even those counts on which the jury had acquitted him. The Court held, therefore, "[h]is consent ... did not amount to an intelligent and competent waiver, since it rested on a grossly inaccurate premise." *McKay*, 280 Md. at 574, 375 A.2d 228.

### —Knowing and Voluntary Waiver?—

In the instant case, we are not faced with the type of obvious misunderstanding making the waiver invalid in *McKay*. It is quite clear from the trial judge's inquiries and the responses that appellant understood the implication of a waiver. Instead, appellant seeks to equate his situation with that presented in *McKay* by contending that,

---

7.  *See State v. Blizzard*, 278 Md. 556, 575, 366 A.2d 1026 (1976) (right to counsel); *State v. Fowler*, 259 Md. 95, 103–04, 267 A.2d 228 (1970) (right to confrontation); *Bonner v. Director*, 237 Md. 445, 447, 206 A.2d 708 (1965) (right to a speedy trial); *Allen v. State*, 183 Md. 603, 612, 39 A.2d 820 (1944) (right against self-incrimination); *Ross v. State*, 24 Md.App. 246, 253, 330 A.2d 507 (1975), *rev'd on other grounds*, 276 Md. 664, 350 A.2d 680 (1976) (right to a poll of the jury).

because he did not know the exact contents of note # 2, he could not intelligently make a decision when presented with the last note accusing one juror of misconduct. We agree and explain.

Rule 4–326 provides in pertinent part:

"**(c)  Communications With Jury.**—The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action."

■ We hold that Rule 4–326(c) requires full communication of the contents of a jury communication so that both parties can have input into the response. In *Smith v. State,* 66 Md.App. 603, 624, 505 A.2d 564, *cert. denied,* 306 Md. 371, 509 A.2d 134 (1986), we stated that "[w]hile the rule expressly requires notice to the parties of any communication from the jury, its very spirit is to provide an opportunity for input in designing an appropriate response to each question in order to assure fairness and avoid error."

A review of the legislative history of Rule 2–521(c) provides support for our interpretation of the requirements of Rule 4–326(c). Rule 2–521(c) is the civil counterpart of Rule 4–326(c), and the two Rules are almost identically worded.[8] The Rules Committee notes in regard to Rule 2–521(c) reveal that the Committee intended that the trial court notify the parties of the receipt of any communication from the jury *before* the trial court developed a response. Rules Committee Minutes, May 22–23, (1981). Therefore, the general rule is that a judge shall not answer questions without first informing counsel and then giving counsel a chance to "address the court's proposed answer." *Exxon*

---

8. The only difference is that Rule 2–521(c) requires notification of "the parties," while Rule 4–326(c) refers to "the defendant and the State's Attorney."

*Corp. v. Yarema,* 69 Md.App. 124, 143, 516 A.2d 990 (1986). "Before responding to an oral or written communication, the court must notify the parties of the receipt and substance of the communication and advise them of the court's intended response, permitting counsel the opportunity to object or to request inclusion of some other response." Neimeyer & Richards, *Maryland Rules Commentary* 308, (1984).

In *Smith,* 66 Md.App. at 625, 505 A.2d 564, we held that the trial judge's failure to conform to the requirements of Rule 4-326(c) was harmless error. In the instant case, the trial judge's error, *i.e.,* his failure to reveal the contents of note # 2, unfortunately resulted in a waiver that could not have been knowingly made. Appellant could have intelligently assessed the alleged juror misconduct information contained in note # 3 *only* if armed with the information contained in note # 2. That is, appellant would have then realized that this one "rogue" juror was what was preventing the jury from reaching a unanimous verdict of guilty.

We realize that if the trial judge had disclosed the entire contents of note # 2 there would have been no possibility of waiver. We think, however, that any gain in the speedy and efficient administration of justice, *i.e.,* avoiding a retrial, is outweighed by a criminal defendant's interest in being able to assess intelligently his chances before waiving his right to a unanimous verdict. Therefore, we establish a "bright-line" rule which requires a trial judge to read the contents of any jury communication to both the State and the defense before allowing the defendant to accept a majority verdict. A bright-line rule in cases such as this will avoid the uncertainties which would arise were we to hold merely that the *substance* of jury communications be revealed. If this means that no waiver is possible where the jury has revealed its position, so be it.

—Suggested by the Trial Judge—

Although we reverse for the reasons given above, we feel compelled to comment upon another troubling aspect of the

waiver given in the instant case, *i.e.*, the fact that the trial judge initiated the waiver by suggesting to appellant, via defense counsel, that he might consider going with a majority verdict. We frame our comments to provide future guidance to a trial court in a similar situation.

There are no Maryland cases which specifically address the issue of whether, in the context of a waiver of a constitutional right, it makes a difference if the suggestion to waive originates with the trial judge. Other jurisdictions, however, have indicated that a defendant's waiver may be held to be involuntary where it is instituted at the trial judge's suggestion.

In *Hibdon v. United States*, 204 F.2d 834, 838 (6th Cir.1953), it was held that a defendant's right to a unanimous verdict cannot be waived under any circumstances. The *Hibdon* Court stated, however, that even *if* the right to a unanimous verdict could be waived, the waiver in question could not have been given voluntarily because "[i]t was initiated by the judge after twenty-seven minutes of jury deliberation." *Hibdon*, 204 F.2d at 839. The Court expressed its concern that the judge's suggestion subtly influenced the defendant's waiver decision by stating:

> "The accused, if found guilty was still under obligation to face the court for sentence and be at the mercy of a Judge whose suggestion to him to accept a majority verdict was flouted. It is conceivable, in these circumstances, that the hazard of judicial disfavor by an impatient Judge might seem to him a serious one. His acquiescence in the Court's suggestion did, in fact, prove to be without serious detriment to him, for the sentences were made to run concurrently with the term he was already serving. They might well have been cumulative."

*Hibdon*, 204 F.2d at 839.

In *Sanchez v. United States*, 782 F.2d 928, 930 (11th Cir.1986), the issue faced by the Court was whether the right to a unanimous verdict in a criminal case may be waived when the defendant himself initiates the request.

After accepting a majority verdict, the *Sanchez* defendants appealed, alleging that the trial court erred in allowing the waivers because the Sixth Amendment and Fed.R. Crim.P. 31(a) mandated a unanimous verdict. *Sanchez*, 782 F.2d at 931. The *Sanchez* Court disagreed, holding that the waiver was permissible. *Sanchez*, 782 F.2d at 935. The Court stated that, although no other federal circuit had yet allowed a waiver, in many cases the waivers had been held to be infirm because the idea of waiver was initiated by the trial judge. *See United States v. Smedes*, 760 F.2d 109 (6th Cir.1985); *United States v. Pachay*, 711 F.2d 488 (2d Cir. 1983).

In concluding that the waiver in *Sanchez* was knowingly and intelligently given, the Court stated:

"Clearly there is a constitutional right to a unanimous verdict, but in exceptional circumstances the defendant should be allowed to waive that right. . . . Before allowing the defendant to waive the right, the following criteria should be met: (1) the waiver should be initiated by the defendant, not the judge or prosecutor; (2) the jury must have had a reasonable time to deliberate and should have told the court only that it could not reach a decision, but not how it stood numerically; (3) the judge should carefully explain to the defendant the right to a unanimous verdict and the consequences of a waiver of that right; and (4) the judge should question the defendant directly to determine whether the waiver is being made knowingly and voluntarily."

*Sanchez*, 782 F.2d at 934.

The *Sanchez* Court stated that one of the reasons for requiring that the idea of waiver originate with the defendant, rather than the trial judge, is to prevent the possibility of coercion by judges who would suggest that the defendant agree to a majority verdict and "then be in a position to recommend or impose a harsh sentence upon a defendant who refuses." The Court also noted that the preliminary draft of Fed.R.Crim.P. 31 had originally contained a provision for waiver of the unanimity requirement, but that the

provision ultimately had been deleted. *Sanchez*, 782 F.2d at 932. The legislative history indicates that it was deleted primarily because of numerous comments opposing it because of its possibly coercive potential.[9]

■ We, too, are deeply concerned about the potential of coercion where the trial judge suggests that the defendant accept a majority verdict. Indeed, we can think of no circumstances where it is appropriate for a trial judge to suggest a waiver. It should be remembered that, in the instant case, the trial judge was the *only* person (with the exception of the jury) who knew that the 11 members of the jury had voted to convict appellant. Thus, the trial judge knew *when* he made the suggestion to appellant, that if appellant agreed he would be convicted. As the instant case illustrates, such a suggestion can place a reviewing court in the uncomfortable position of wondering whether the trial judge was truly impartial.

By suggesting that appellant waive his right to a majority verdict, the trial judge applied a subtle form of coercion, in that the fact that this particular judge would ultimately sentence him or preside at any retrial may have been an implicit factor in appellant's decision. Moreover, the trial judge failed to assure appellant that any decision he made about the majority verdict would have no impact at sentencing or further proceedings. The safe practice, obviously, is for trial judges to refrain from making such suggestions.

---

**9.** In Pachay, 711 F.2d at 490 n. 1, the Court set forth "one of the most telling criticisms":

> " '[T]he character of the tribunal by which a man may be imprisoned and how the tribunal functions are things so fundamental that they should be determined by law and should be the same for all men.... The mere fact that an accused person may be asked to consent to a majority verdict ... prejudices him, if he does not consent. The Government always has the advantage and always will agree.'
>
> 1. Comments, Recommendations and Suggestions Received Concerning the Preliminary Draft of the Federal Rules of Criminal Procedure 139 (Sept. 25, 1943) (on file in the Harvard Law School Library)."

## PHOTOGRAPHIC IDENTIFICATION

Approximately one year after the robbery, Preston was contacted by Detective Freysz of the Frederick County Sheriff's Department who had identified appellant as a suspect based on a Crime Solver's tip. Freysz came to Preston's home and showed him two photographic arrays. Preston identified appellant from array # 1, after studying it for five minutes.[10] Preston had described the gunman to police immediately after the robbery as 5'9", 140 pounds, with black sunglasses, dark bandanna, and carrying a .22 caliber short blue pistol. He made no mention of facial hair. Preston stated that he had studied the gunman's cheeks and bone structure during the robbery, and was completely certain of his identification.

The photographic array in question consisted of six black and white photographs of young white males. Scales on the sides of each picture indicated height. At the suppression hearing, Freysz testified that he had endeavored to compose an array of men with facial characteristics and hair similar to appellant. With the exception of one photograph,[11] the trial judge agreed, finding the array was not suggestive and stated "it would be difficult to get an array that is more similar than this. This is rather, in my opinion it's one of the better arrays I've seen."

■ Appellant argues that the trial court erred in refusing to suppress Preston's identification because the array was extremely suggestive. We disagree and explain.

As we stated in *Loud v. State*, 63 Md.App. 702, 706, 493 A.2d 1092, *cert. denied*, 304 Md. 299, 498 A.2d 1185 (1985), the defense bears the burden of showing unnecessary suggestiveness in police procedure. Only *after* a prima facie taint is shown is the State required to prove, by clear and

---

10. Preston was unable to make an identification from array # 2, which contained a photograph of Windon.

11. This photograph was of an obviously bald man in a Harley–Davidson jacket.

convincing evidence, that the identification was reliable. *Loud,* 63 Md.App. at 706, 493 A.2d 1092. Thus, in the instant case, we must consider whether the photo array was so inherently suggestive so as to satisfy appellant's burden.

In support of his contention that the array was extremely suggestive, appellant points to Preston's testimony that Preston "went right to" appellant's picture in the array. This does not necessarily indicate that the array was suggestive—rather, it creates an inference that Preston was sure of his identification. After all, he testified that he had closely studied the gunman's bone structure. Moreover, a review of the array itself reflects nothing suggestive. The photographs depict young men with remarkably similar bone structure. We therefore hold that the trial judge did not err in refusing to suppress the identification based on the array.

JUDGMENTS REVERSED.

COSTS TO BE PAID BY FREDERICK COUNTY.