638 A.2d 754

**Nathaniel Antonio STEWART**

v.

**STATE of Maryland.**

**No. 106, Sept. Term, 1993.**

Court of Appeals of Maryland.

March 24, 1994.

214

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., RODOWSKY, CHASANOW, KARWACKI, ROBERT M. BELL and RAKER, JJ., and CHARLES E. ORTH, Jr., Judge Retired, Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

I

We have cautioned bench and bar on numerous occasions that the Maryland Rules of Procedure

are not guides to the practice of law but precise rubrics "established to promote the orderly and efficient adminis-

tration of justice and [that they] are to be read and followed."

*Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, 270 A.2d 476 (1970), quoting *Brown v. Fraley,* 222 Md. 480, 483, 161 A.2d 128 (1960). We reminded in *Noble v. State,* 293 Md. 549, 557, 446 A.2d 844 (1982) that

[t]his Court has firmly adhered to the principle that the rules of procedure are precise rubrics to be strictly followed, and we shall continue to do so.

We proclaimed:

A violation of one of these rules constitutes error, normally requiring such curative action or sanction as may be appropriate.

*Id.*

Maryland Rule 4–326(c) concerns communications with the jury. It commands:

The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action.

Maryland Rule 4–231(b) concerns the right of a defendant to be present in a criminal action. It declares, in relevant part:

A defendant is entitled to be present at . . . every stage of the trial. . . .

Subsections (1), (2), and (3) list exceptions:

(1) at a conference or argument on a question of law;

(2) when a nolle prosequi or stet is entered . . .; or

(3) at a reduction of sentence. . . .

Section (c) speaks to waiver of the right. It states:

The right to be present under section (b) of this Rule is waived by a defendant:

(1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

(2) who engages in conduct that justifies exclusion from the courtroom, or

(3) who, personally or through counsel, agrees to or acquiesces in being absent.

## II

The judge of the Circuit Court for Baltimore County presiding at the jury trial of Nathaniel Antonio Stewart, who was charged with robbery with a deadly weapon and related offenses, violated both of these rules. His error in not abiding by them came about in this manner. The evidentiary phase of the trial had concluded and the jury retired to deliberate its verdicts. The jury had not returned when the court clerk informed the judge that "there was a problem" with one of the jurors. The judge

went to the jury room and was handed a note signed by Sandra Rubin, one of the jurors, that said I need to talk to you.

According to the judge, he "was reluctant to talk with her at all." But, he explained,

[a]pparently she was upset and tearful so I asked her to come out of the jury room and she stood just out the jury room door and said that she [was] nervous and upset and afraid she was going to say something she shouldn't say to one of the other jurors.

The judge told her:

Well, I don't want to know why you feel you can't say something to another juror. If there is disagreement you have to use your conscience about how you handle disagreements when you are discussing the case among yourselves.

"From her comments and from her attitude it seemed apparent [to the judge] there was a division of opinion among the jurors." So the judge

asked her to go back and continue deliberating and exercise her best judgment as to how her duty should be discharged. She agreed to do that.

The jury resumed its deliberations.

When the jury had been out about four hours, the forelady sent a note to the judge asking, "Does a hung jury mean he goes free for this crime?" At this point, the judge realized that he had been remiss in his encounter with the juror. He told Stewart and counsel:

> There have been a couple matters that have occurred since we broke and the—the jury began deliberation I think we should discuss here on the record and in the presence of the defendant.

The judge recounted the circumstances of the matter involving Rubin as he recalled them, and explained how he had handled the situation. He informed the defendant and counsel of the forelady's question and stated that he would have to answer it. Defense counsel said that she would prefer to address the Rubin matter first. She said that she would like the record to reflect that she was in the courtroom when, about a half hour before, Rubin asked to see the judge—"I was staying here most of the deliberation." Defense counsel pointed out:

> I was standing in the courtroom when I heard someone yelling and crying. I don't mean to dispute with you, Your Honor, I think your description as "upset" and tearful—

The judge interrupted, "Perhaps a little conservative." Defense counsel continued:

> She came out and she was audibly sobbing and crying to the point where some of the Court personnel in other chambers came out to see. Clearly she asked to see you. You came. I, for the record, no question in speaking to the jury in that context, however, as soon as you finished I did approach you.

The judge agreed that she did. Defendant's counsel explained:

> I asked to go on the record for a mistrial for the purposes that I believe that the personalities involved among the

jurors had deteriorated to such a point that one juror is visibly upset, sobbing and crying. I do not wish—I think that there comes a point where the resolution of this matter is not possible when you have jurors this upset. I don't know which way she is. I don't think any of us know which way the split is or anything like that, but because of the conduct of the jurors, because of her coming out of the room speaking to the Court, I would at this time ask for a mistrial based on manifest necessity.[1]

The judge replied:

I will hold [the motion for a mistrial] under advisement, consider the possibility of granting it depending on further development.[2]

It was not long thereafter that the jury rendered its verdicts. Stewart was convicted of robbery with a deadly weapon, robbery, and the use of a handgun in the commission of a felony. The jury was polled; the verdicts stood. The State announced that it was seeking enhanced punishment in view of Stewart's status as "a three time loser." *See* Md.Code (1957, 1992 Repl.Vol.) Art. 27, § 643B(c). Defense counsel requested a pre-sentence investigation; the judge granted the request. At this point, the judge ruled on defense counsel's motion for a mistrial. He said without elaboration:

---

**1.** The encounter between the judge and the juror, Rubin, and the colloquy between the judge and defense counsel after Rubin returned to the jury room were not recorded. The judge's recollection of what occurred at his encounter with Rubin and defense counsel's recounting of what she then said to the judge were recorded when the judge convened the defendant and counsel upon receiving the note from the forelady.

For a discussion of manifest necessity *see State v. Crutchfield,* 318 Md. 200, 209–210, 567 A.2d 449 (1989), *cert. denied,* 495 U.S. 905, 110 S.Ct. 1926, 109 L.Ed.2d 289 (1990); *Cornish v. State,* 272 Md. 312, 316–318, 322 A.2d 880 (1974).

**2.** After extensive discussion, the judge, over objection by defense counsel, answered the forelady's question by telling her that "[a] result of a hung jury is not a factor to be considered by you."

The propriety of the judge's answer to the forelady's question is not challenged on this appeal. We do not address it.

Incidentally, with respect to the defense motion for mistrial, I did reserve on that motion. I have thought about it further, I'm going to deny the motion for mistrial.

About three and a half months later the sentencing phase of the case was reached. In the meantime, Stewart had filed a motion for a new trial alleging numerous errors, one of which was, "The verdict resulted from misconduct of the jurors." The motion was argued on the day of sentencing. Counsel for Stewart noted that the trial judge "had essentially a private conversation with" Rubin and that telling her to go back and rejoin the deliberations was tantamount to "coercing a verdict...." The motion for a new trial was denied. Sentences were duly imposed. Stewart appealed from the judgments of conviction.

The Court of Special Appeals affirmed the judgments in *Stewart v. State,* 97 Md.App. 770. One of the questions Stewart presented to the intermediate appellate court was whether the trial court erred in denying his motion for a mistrial. The Court of Special Appeals noted that the reason advanced by Stewart's trial counsel for the grant of a mistrial was "based on manifest necessity." *Id.,* slip opinion at 2. Stewart's counsel on appeal to the Court of Special Appeals, however, looked to Rule 4–326(c). But, the Court of Special Appeals observed:

> [Stewart] now complains that the court improperly communicated with the juror [, Rubin,] and that sending her back to deliberate was a coercive measure. The arguments [Stewart] presents to us, therefore, are somewhat different arguments than those he advanced before the trial court.

*Id.* Nevertheless the court asserted:

> We shall address the issue as if it had been properly preserved; [Stewart] still does not prevail. Whether to grant a mistrial is a decision vested in the sound discretion of the trial judge, who can best weigh the danger of prejudice arising from any alleged impropriety within the context of the entire case, and who is, therefore, in the best position to determine if a mistrial is warranted. *See Hunt*

*v. State,* 321 Md. 387, 422[, 583 A.2d 218] (1990), *cert. denied* [—— U.S. ——], 112 S.Ct. 117, [116 L.Ed.2d 86] (1991). We will not reverse a trial court's denial of a motion for mistrial unless the accused was so clearly prejudiced that the denial constituted an abuse of discretion. *Hunt, supra* [321 Md.], at 422 [583 A.2d 218].

*Id.,* at 2–3. The court continued:

Since we are not persuaded that the court's advice to the distraught juror to use her "conscience" and "best judgment" in coping with her fellow juror prejudiced the accused, we perceive neither error nor abuse of discretion in denying the motion for mistrial.

*Id.*

We granted Stewart's petition for a writ of certiorari. The only question presented to us by his petition was:

Did the lower court err in denying petitioner's Motion for Mistrial where the court communicated with and sent an emotionally distraught juror back into the jury room to continue deliberations without first communicating with counsel?

### III

### A

Stewart had different counsel representing him at each stage of the case. As we have seen, trial counsel relied on "manifest necessity" as reason for a mistrial. Counsel on direct appeal looked to Rule 4–326(c) (Communications With Jury). Counsel on our grant of certiorari adhered to Rule 4–326(c). Now we add Rule 4–231 (Presence of Defendant) to the pot. Rule 8–131(a) provides in relevant part:

Ordinarily, the appellate court will not decide any ... issue [other than the issues of jurisdiction over the subject matter or over a person] unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to

guide the trial court or to avoid the expense and delay of another appeal.

The word "ordinarily" gives us discretion to consider issues not raised or decided below. *See State v. Bell,* 334 Md. 178, 113, 638 A.2d 107 (1994); *Crown Oil v. Glen,* 320 Md. 546, 561, 578 A.2d 1184 (1990); *Taub v. State,* 296 Md. 439, 441–442, 463 A.2d 819 (1983), and cases therein cited. We exercise our discretion here to determine the propriety of the denial of the motion for a mistrial on the basis of Rules 4–326(c) and 4–231 even though those Rules were not relied on by—or argued before—the trial court.

### B

As we have seen, Rule 4–326(c) concerns "the receipt of any communication from the jury pertaining to the action...." The court is obliged to notify the defendant and the State's Attorney of the receipt of such communication *before* responding to it. "All such communications between the court and jury *shall* be on the record in open court or *shall* be in writing and filed in the action" (emphasis added). These prescriptions are mandatory, not directory, but the trial judge disregarded every command of the Rule.[3]

The Court of Special Appeals explored Rule 4–326(c) in *Allen v. State,* 77 Md.App. 537, 551 A.2d 156, *cert. denied,* 315 Md. 692, 556 A.2d 674 (1989). The intermediate appellate court held that the Rule

---

**3.** Ironically, the trial judge recognized the requirements of Rule 4–326(c) as far as the jury was concerned in his instructions. He told the jury:

> If you need to communicate with the Court ... please reduce your message or question to writing, signed by your forelady and pass the note to the person who will be guarding the door who will then promptly bring it to my attention....
>
> I will then respond as soon as possible either in writing or by having you return to the courtroom.

The judge did not abide by the procedure he outlined in his instructions.

requires full communication of the contents of a jury communication so that both parties can have input into the response.

*Id.* 77 Md.App. at 545, 551 A.2d 156. The court quoted from its *Smith v. State,* 66 Md.App. 603, 624, 505 A.2d 564, *cert. denied,* 306 Md. 371, 509 A.2d 134 (1986) that

> "[w]hile the rule expressly requires notice to the parties of any communication from the jury, its very spirit is to provide an opportunity for input in designing an appropriate response to each question in order to assure fairness and avoid error."

*Allen,* 77 Md.App. at 545, 551 A.2d 156. In *Graham v. State,* 325 Md. 398, 415, 601 A.2d 131 (1992), we agreed with *Allen* that

> the spirit of the Rule is to provide relevant information to those most vitally concerned with the trial....

But we tempered the averment in *Allen,* 77 Md.App. at 545, 551 A.2d 156, that the Rule always required "full communication of the contents of a jury communication...." We noted that

> there may be occasions when at least a part of a communication from a jury may properly be withheld from the parties and/or from the public record.

*Graham,* 325 Md. at 415, 601 A.2d 131 (citation omitted). We pointed out that the Rule relates to communications "pertaining to the action," and we suggested, for example, "that the failure to disclose the contents of a note from a jury requesting transmittal of a purely personal message to a member of the juror's family or to a babysitter" would not constitute error. *Id.* We recognized in *Graham,* moreover, that in certain circumstances, a violation of the Rule may not require reversal because the issue was not preserved for appeal or was harmless. *Id.*

The communication between Rubin and the trial judge surely "pertained to the action;" it was during the course of a vital part of the trial. A juror's reluctance to continue to deliberate with the other jurors and separating from the other

jurors by leaving the jury room cannot be divorced from the action. There is no question that the ex parte meeting between the judge and the juror was an erroneous procedure. But that did not stand alone. Stewart was not present during this discourse between the juror and the judge. He was in the lockup awaiting the return of the jury. He was not informed at that time of the communication from the juror and the judge's response thereto. The prosecutor was not timely notified, nor was defense counsel. The communication between the judge and the juror was not on the record in open court or in writing and filed in the action contemporaneously with its occurrence. It is clear that the failure of the trial judge to obey the commands of Rule 4–326(c) constituted error. Before us, the State conceded that there was at least a "technical violation" of the Rule.

## C

We have explored in a number of cases a defendant's entitlement to be present at every stage of his trial as guaranteed by Rule 4–231. *See,* for example, *Noble v. State,* 293 Md. at 557–558, 446 A.2d 844; *Williams v. State,* 292 Md. 201, 211–212, 438 A.2d 1301 (1981); *Porter v. State,* 289 Md. 349, 353–356, 424 A.2d 371 (1981); *Hughes v. State,* 288 Md. 216, 221–227, 421 A.2d 69 (1980); *Bunch v. State,* 281 Md. 680, 683–688, 381 A.2d 1142 (1978) and cases therein cited; *Midgett v. State,* 216 Md. 26, 36–38, 139 A.2d 209 (1958).

▮▮▮▮ Maryland has long recognized the common law right of a defendant to be present at trial. *See Hughes v. State,* 288 Md. at 221, 421 A.2d 69. We said in *Williams v. State,* 292 Md. at 211, 438 A.2d 1301 (citations omitted):

As we have often pointed out, a criminal defendant's right to be present at every stage of his trial is a common law right, is to some extent protected by the Fourteenth Amendment to the United States Constitution, and is guaranteed by Maryland Rule 724 [now Maryland Rule 4–231].

Any communication pertaining to the action between the jury and the trial judge during the course of the jury's delibera-

tions is a stage of the trial entitling the defendant to be present. *See Bunch v. State,* 281 Md. at 685, 381 A.2d 1142; *Midgett v. State,* 216 Md. at 36–37, 139 A.2d 209. The right is deemed "absolute," and a judgment of conviction ordinarily cannot be upheld if the record discloses a violation of the right. *See Porter v. State,* 289 Md. at 352–353, 424 A.2d 371. It is clear that the judge's failure to obtain Stewart's presence at his encounter with the juror, Rubin, was erroneous.

## IV

The close alliance between Rule 4–326(c) and Rule 4–231 is apparent. So it is that an error with respect to them may be excused when the error is waived, and any error may be defanged if it is harmless. In either case, reversal would not be required.

## A

Until *Williams,* 292 Md. 201, 438 A.2d 1301, was decided, we consistently held that "the right to be present is personal to the accused and cannot be waived by his counsel." *Midgett v. State,* 216 Md. at 37, 139 A.2d 209, quoted in *Williams,* 292 Md. at 214, 438 A.2d 1301. *See Porter,* 289 Md. at 353, 424 A.2d 371; *Hughes,* 288 Md. at 223, 421 A.2d 69 and cases cited therein; *Bunch,* 281 Md. at 688, 381 A.2d 1142. In *Williams,* we took a fresh look at the common law. It was our judgment that the Maryland common law principle

that the right to be present at every stage of the trial can never be waived by counsel's action or inaction, should now be modified in light of present conditions.

292 Md. at 217, 438 A.2d 1301. We acknowledged that "[w]hile the role of counsel in criminal cases has been generally the same over the past two hundred years, nevertheless there have been some significant changes." *Id.*

When many of our earlier cases involving waiver of the right to be present were decided, there was no right to counsel, including state-furnished counsel to indigents, in many criminal cases presenting the possibility of incarcera-

tion. Now, however, we do recognize such right under the Sixth Amendment and under Art. 21 of the Maryland Declaration of Rights, implemented by the Public Defender Act. . . .

*Id.* at 217–218, 438 A.2d 1301 (citations omitted). We observed:

Today, with the complexity of many criminal trials and the absolute right of counsel if there is a danger of incarceration, our system proceeds upon the assumption that it is primarily counsel's function to assent or waive most "rights" of the defendant. Unless a defendant speaks out, normally he must be bound by the trial decisions, actions and inactions of counsel. Otherwise, the system simply would not work.

*Id.* at 218, 438 A.2d 1301 (citations omitted). We noted an important limitation in our change in the common law, namely, when a violation of the right to be present is also a violation of the confrontation clause of the Sixth Amendment to the United States Constitution and of Article 21 of the Maryland Declaration of Rights. Then there must be an intentional relinquishment or abandonment of a known right or privilege. *Id.* at 219, 438 A.2d 1301. We held:

With respect to all criminal trials, or parts of trials, taking place after the issuance of our mandate in this case, an effective waiver of the defendant's right to be present at every stage of the trial will not always require a personal waiver by the defendant. Where the right of confrontation is not implicated, and where there is involved no other right requiring intelligent and knowing action by the defendant himself for an effective waiver, a defendant will ordinarily be bound by the action or inaction of his attorney.

*Id.* We emphasized, however, that our change in the common law affected only the *waiver* of the right to be present at all stages of the trial; it did not affect the right itself. *Id.* *See Noble v. State,* 293 Md. at 554–556, 446 A.2d 844.

In the case at hand, it is perfectly clear that Stewart did not waive his right to be present at the encounter between the

judge and the juror. He had no opportunity to object when the error was committed; he was in the lockup awaiting the jury's return to deliver its verdicts. The exceptions to the right to be present spelled out in Rule 4–231(b)(1)(2) and (3) were not applicable, and he was not within the ambit of what constituted waivers set out in § c of the Rule. He was not even informed of the incident until well after it had occurred.

Inasmuch as the right to be present at a communication with the jury was not a constitutional right requiring intelligent and knowing action by Stewart himself, he could have been bound if there was a waiver by his counsel. But it is certain that Stewart's counsel did not waive his right to be present. She demanded a mistrial when she first approached the judge upon Rubin's return to the jury room, and again when the judge convened the defendant and counsel upon receiving the forelady's note. When the judge described his encounter with the juror, Rubin, defense counsel's position was that it was a "manifest necessity" to grant a mistrial. And the record amply indicated a *manifest*, that is, as the Court said in *State v. Crutchfield*, 318 Md. at 207, 567 A.2d 449,

> palpable, evident, obvious, clear, plain, or patent, necessity for the trial judge to have aborted the trial....

*Cf. United States v. United States Gypsum Co.*, 438 U.S. 422, 459–462, 98 S.Ct. 2864, 2884–86, 57 L.Ed.2d 854 (1978); *Rogers v. United States*, 422 U.S. 35, 40–41, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). The *manifest* necessity, of course, was the judge's failure to comply with Rule 4–326(c) and Rule 4–231. Unless there is an effective waiver of the right to be present at every stage of the trial bestowed by Rule 4–231, a violation of the Rule is error that ordinarily results in granting a new trial. *Noble v. State*, 293 Md. at 557–558, 446 A.2d 844. We hold that there was not an effective waiver of Stewart's right to be present when the juror communicated with the judge.

### B

We declared in *Noble*, 293 Md. at 568–69, 446 A.2d 844:

the harmless error principle is fully applicable to a defendant's right to be present during a stage of the trial. Prejudice will not be conclusively presumed. If the record demonstrates beyond a reasonable doubt that the denial of the right could not have prejudiced the defendant, the error will not result in a reversal of his conviction.

We defined the harmless error principle henceforth to be followed by us in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976) (footnote omitted):

[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded— may have contributed to the rendition of the guilty verdict.

We discussed *Dorsey* in *Johnson v. State,* 325 Md. 511, 520, 601 A.2d 1093 (1992):

In *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976) we adopted a test to determine whether an error in criminal causes is harmless or prejudicial. We went beyond constitutional dictates. We saw

no sound reason for drawing a distinction between the treatment of those errors which are of constitutional dimension and those other evidentiary, or procedural, errors which may have been committed during a trial.

(quoting *Dorsey,* 276 Md. at 657, 350 A.2d 665.)

We believe that the record here demonstrates that Stewart was prejudiced by the judge's errors. The eleven other jurors, who remained in the jury room when Rubin stalked out "audibly sobbing and crying" were not made aware on the record of what occurred while Rubin was out of their presence. We, of course, do not know what Rubin said to the other jurors when she returned, or how she explained her actions, and we do not know how the remainder of the panel

reacted to her conduct. The judge expressed a belief that the jury was divided, but we have no way to ascertain which side Rubin was on. Furthermore, Stewart's absence at the meeting between the judge and Rubin precluded him from having "input" in the judge's response to the juror's conduct. Stewart may have had other suggestions as to how the situation could be handled, for example that the trial be continued upon agreement with eleven jurors. No matter how innocent the motives of the judge may have been, and no matter what may have actually been said to the juror (the conversation here was not recorded), the mere opportunity for improper influence in Stewart's absence prejudiced him. Stewart was denied the chance to evaluate the distress of the juror and the judge's solution to the problem and make such objection and suggestions as he deemed to be advisable. It may be that what the judge said to the juror was no more than a repetition of a part of his instructions to the entire panel before the jury retired. Even so, Stewart was entitled to be present. *See Midgett v. State,* 216 Md. at 36, 139 A.2d 209. It was clearly prejudicial for the judge to further instruct one juror rather than the entire panel. We are aware of no authority that authorizes a judge to instruct or give additional instructions to other than the entire panel duly assembled in the presence of the defendant and his counsel pursuant to the dictates of Rule 4–326(c) and Rule 4–231. *See* Rule 4–325 (Instructions to the Jury). Further, the substance of the judge's conversation with the juror, as described by the judge, prevents the error from being harmless.

Surely, the trial judge's motive in urging the recalcitrant juror to "go back and continue deliberating and exercise her best judgment as to how her duty should be discharged" was to obtain unanimous verdicts of the jury on the offenses charged. This supplemental instruction was improper even had it been given to the entire jury. It was in the nature of an *Allen* charge, but was so foreshortened as to be woefully inadequate. We have approved an instruction that closely follows the language of 15–4.4 of the *American Bar Association Standards for Criminal Justice* (1978, 1986 Supp.), "pro-

vided there is no deviation in substance from the language of that standard." *Graham v. State*, 325 Md. at 409, n. 4, 601 A.2d 131. *See Goodmuth v. State*, 302 Md. 613, 622–23, 490 A.2d 682 (1985); *Burnette v. State*, 280 Md. 88, 96, 371 A.2d 663 (1977); *Kelly v. State*, 270 Md. 139, 144, 310 A.2d 538 (1973). What the judge here said to Rubin in no way met the requisites of the instruction we have indicated would be proper to give a jury having difficulty reaching a verdict.[4]

## V

We have found that:

1) the trial judge erred in his encounter with the juror, Rubin; and

2) the error was not waived by Stewart or his counsel; and

3) the error was not harmless.

Thus, the trial judge abused his discretion in denying Stewart's Motion for a Mistrial. Therefore,

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;*

*CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTION TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH DIRECTION TO VACATE ITS JUDGMENTS AND ORDER A NEW TRIAL;*

---

4. In days of yore the procedure for obtaining a unanimous verdict was much more draconian. Both before and after Blackstone's time,

   [t]he jury, after proofs are summed up, unless the case be very clear, withdraw from the bar to consider of their verdict: and, in order to avoid intemperance and causeless delay, are to be kept without meat, drink, fire, or candle, unless by permission of the judge, till they are all unanimously agreed.

   William Blackstone, 3 *Commentaries on the Laws of England* 375 (1768). *See* Sir Patrick Devlin, *Trial By Jury* 50 (1956); Sir Matthew Hale, 2 *The History of the Pleas of the Crown* 296–297 (1st American ed. 1847). This procedure was strictly enforced until the enactment of the Jurors Act, § 23 (1870), which permitted jurors to have fire and refreshment at their own expense. *Trial by Jury* at 50, n. 15 at 170.

*COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.*