21 A.3d 1048

**Policarpio Espinoza PEREZ & Adan Canela**

v.

**STATE of Maryland.**

**No. 94, Sept. Term, 2010.**

Court of Appeals of Maryland.

June 17, 2011.

---

Brian J. Murphy, Assigned Public Defender, Baltimore, MD, on brief, for petitioners.

David P. Kennedy, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioners.

Diane E. Keller, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

Petitioners, Policarpio Espinoza Perez ("Perez") and Adam Espinoza Canela ("Canela"), were convicted of murder and related offenses in the Circuit Court for Baltimore City. Before this Court, Petitioners challenge the non-disclosure of multiple jury notes submitted to the judge during the course of the trial. Specifically, the Petitioners presented one question for our review:

> Did the Court of Special Appeals err in applying a weakened harmless error test to the admittedly erroneous non-disclosure to counsel of six substantive jury notes in this case?

We shall answer the question in the affirmative. In the present case, jury members sent more than thirty notes to the court during the course of the trial, seeking clarification of testimony and asking questions relating to the case. Of those notes, six were not disclosed to counsel for the defense or the State, or to the Petitioners. Petitioners challenge the failure of the trial judge to disclose jury notes in accordance with Maryland Rule 4–326(d), which states:

> **Communications with jury.** The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk or the court shall note on a written communication the date and time it was received from the jury.

The State concedes that the trial judge erred in not disclosing the notes; the issue before this Court is whether the error was harmless beyond a reasonable doubt.

## FACTS AND PROCEDURE

On May 27, 2004, three children were killed while alone in an apartment in Northwest Baltimore. The children, who

were members of the same extended family as Petitioners,[1] were discovered by their parents when the parents returned home from work. A neighbor called the police, who arrived on the scene and began their investigation. As family members began arriving at the apartment complex, they were taken to the rental office, where they were interviewed by a detective, with another officer serving as an interpreter. About fifteen relatives voluntarily went into the conference room of the rental office, and were asked questions regarding their identity, their relation to the victims, and when they had last seen the children alive.

When Petitioners arrived a few hours later, they were interviewed by the police. Petitioners appeared to have showered recently and gave inconsistent statements as to their prior whereabouts. A neighbor told police that two days prior to the discovery of the victims, she had seen Petitioners coming out of the bushes near the victims' apartment and acting suspiciously. After questioning, the Petitioners were taken to the homicide unit and placed in adjacent holding cells. Both Petitioners were questioned separately, and based on Perez's statement, both Petitioners were arrested and a search warrant was issued for their shared home and Perez's car. In Petitioners' home, police found a pair of blue jeans with apparent blood stains and a knife impression. In Perez's car, police recovered two gloves and another pair of jeans with apparent blood stains. DNA analysis on the items subsequently linked Petitioners to the victims. The gloves were analyzed using a device invented by Salvatore Bianca, an expert in the field of trace analysis. Using Bianca's micro-vacuum technique, samples were collected from the interior

---

1. Ricardo Espinoza Perez and Noemi Quezada Morales were the parents of two of the children, Ricardo and Lucero. Maria Andrea Espejo–Quezada is Noemi's niece, and the mother of the third victim, Alexiz. All members of this family lived together in the apartment. Petitioner Perez is Ricardo Sr.'s youngest brother. Petitioner Canela is the son of Perez and Ricardo Sr.'s oldest brother, Victor. Thus, Petitioner Perez is the uncle of Petitioner Canela, but they are separated in age by only five years, and lived together on Bedford Road in Baltimore.

surface of the gloves and the jeans.[2] The Petitioners were arrested and later tried by a jury. The first trial resulted in a hung jury in 2005. The second trial took place throughout June, July and August of 2006, and resulted in guilty verdicts for both Petitioners. Petitioners each received: two consecutive terms of life in prison without the possibility of parole for first-degree murder, a consecutive thirty-year sentence for second-degree murder, and a concurrent life sentence for three counts of conspiracy to commit murder.

Petitioners appealed their convictions to the Court of Special Appeals. Relevant to this case, Petitioners contested multiple jury notes which were not disclosed to counsel at trial, and were only discovered when counsel reviewed the record for appeal. The Court of Special Appeals remanded the matter to the Circuit Court for fact-finding on the issue, as provided for by Md. Rule 8–413(a).[3] Retired Judge Dennis M. Sweeney was specially assigned to conduct an evidentiary hearing to determine whether certain jury notes had been disclosed. The hearing judge determined that the jury wrote twenty-eight notes, which were submitted to the judge during the trial, posing questions concerning the evidence presented. Judge Sweeney found that notes 6, 7, 14, 21, 23, and 26 were not disclosed to either counsel or Petitioners. Based on the opinion issued by Judge Sweeney, both parties filed supplemental briefs in the Court of Special Appeals. After the supplemental briefing and oral argument, that court affirmed the judgments of conviction. *Canela v. State*, 193 Md.App.

---

2. The reliability of the micro-vacuum method was the subject of a Frye/Reed hearing during the trial. The result of the Frye/Reed hearing was adverse to Petitioners and the evidence garnered through the technique was admitted via Bianca's testimony.

3. Rule 8–413 is entitled "Record—Contents and form." Rule 8–413(a) states in pertinent part:

> The lower court, by order, shall resolve any dispute whether the record accurately discloses what occurred in the lower court, and shall cause the record to conform to its decision. When the Court of Appeals reviews an action pending in or decided by the Court of Special Appeals, the record shall also include the record of any proceedings in the Court of Special Appeals.

259, 997 A.2d 793 (2010). Subsequently, we granted Petitioners' Petition for Writ of Certiorari. *Perez v. State,* 416 Md. 272, 6 A.3d 904 (2010).

## DISCUSSION

■ Md. Rule 4–326(d) provides explicit guidance to a trial court in dealing with communications from the jury. In interpreting the Maryland Rules, we have stated, "we use the same well-established canons of construction that we use when interpreting statutes." *Dove v. State,* 415 Md. 727, 738, 4 A.3d 976, 982 (2010). Specifically:

"As we have so often stated, the chief objective of statutory construction is to discover and effectuate the actual intent of the legislature in enacting the statute." *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004). When interpreting legislative intent, "we look first to the plain language of the statute [or Rule], 'as the words of the statute, given their ordinary and popularly understood meaning, are the primary source of legislative intent.'" *Melgar v. State,* 355 Md. 339, 347, 734 A.2d 712, 716 (1999) (quoting *Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675, 678 (1994)). As this Court and the intermediate appellate court have reiterated on numerous occasions, the word "shall" indicates the intent that a provision is mandatory. *E.g., State v. Green,* 367 Md. 61, 82, 785 A.2d 1275, 1287 (2001) ("When the Legislature commands that something be done, using words such as 'shall' or 'must' rather than 'may' or 'should,' the obligation to comply with the statute or rule is mandatory.").

*Dove,* 415 Md. at 738, 4 A.3d at 982. In the context of Md. Rule 4–326(d), we have stated, "[t]he rules governing communications between the judge and the jury are basic and relatively simple to adhere to in practice.... These rules are not abstract guides. They are mandatory and must be strictly followed." *Winder v. State,* 362 Md. 275, 322, 765 A.2d 97, 122–123 (2001) (citations omitted); *see also Porter v. State,* 289 Md. 349, 352–353, 424 A.2d 371, 374 (1981) (noting that "the right is deemed 'absolute,' and a judgment of conviction

ordinarily cannot be upheld if the record discloses a violation of the right.").

 Maryland Rule 4–326 originates from the
right of a criminal defendant to be present at every stage of his trial [which] is, as we have said many times, a common law right preserved by Art. 5 of the Maryland Declaration of Rights. The right, in some measure at least, is also protected by the Fourteenth Amendment to the United States Constitution. Finally, the right is guaranteed by Maryland Rule [4–231, requiring the presence of the defendant at all stages of the trial].

*Bunch v. State,* 281 Md. 680, 683–684, 381 A.2d 1142, 1143–44 (1978) (internal citations omitted). Further, "communications between the trial judge and the jury relating to the jury's verdict are generally considered stages of the trial when the defendant has a right to be present." *Bunch,* 281 Md. at 685, 381 A.2d at 1144. In *Midgett v. State,* 216 Md. 26, 139 A.2d 209 (1958), we thoroughly discussed the right to be present, stating:

In this State there is no doubt that an accused in a criminal prosecution for a felony has the absolute right to be present at every stage of his trial from the time the jury is impaneled until it reaches a verdict or is discharged, and there can be no valid trial or judgment unless he has been afforded that right. The constitutional guarantee includes the right of the accused to be present ... (iii) when the court communicates with the jury in answer to questions propounded by the jury, or (iv) when there shall be any communication whatsoever between the court and the jury; *unless* the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury.

*Midgett,* 216 Md. at 36–37, 139 A.2d at 214. Additionally, "[w]hile the rule expressly requires notice to the parties of any communication from the jury, its very spirit is to provide an opportunity for input in designing an appropriate response to each question in order to assure fairness and avoid error."

*Smith v. State,* 66 Md.App. 603, 624, 505 A.2d 564, 574 (1986) *cert. denied,* 306 Md. 371, 509 A.2d 134 (1986).

Current Md. Rule 4–326(d) is derived from former Rule 758(d). Interestingly, prior to being recodified as Md. Rule 4–326, former Rule 758 was altered on July 1, 1977. In changing Rule 758, we dropped the language "[a]fter the jury has retired to deliberate, all communications between it and the court shall be made on the record in open court or shall be in writing and filed in the case," and replaced it with language pertinent to timing and notification of jury communications. After the amendment, the rule stated "[t]he court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the case. All communications between the court and the jury shall be made on the record in open court, or shall be in writing and filed in the case." Thus, the Court expanded the requirement of disclosure of jury communications by the trial court from solely during deliberation to include any point during the case. When Rule 758(d) was recodified as Md. Rule 4–326(c),[4] effective in 1985, the new rule specifically required that the trial judge shall notify the parties "before responding to the communications." This Court approved subsequent changes to Md. Rule 4–326(d) in 2003, adding the phrase "as promptly as practicable," and in 2005, formalizing the requirements for notification by requiring that the court or clerk record a date and time on any written communication received from the jury.

■ As seen above, Md. Rule 4–326 protects an important right, and therefore we employ the harmless error analysis when reviewing violations of the rule. *Noble v. State,* 293 Md. 549, 568, 446 A.2d 844, 854 (1982) ("the harmless error principle is fully applicable to a defendant's right to be present during a stage of the trial."). We discussed this standard at length in *Dove:*

---

4. Current Md. Rule 4–326(d) was previously 4–326(c). Md. Rule 4–326 was amended effective in 2003 to include a new section (a), and was redesignated accordingly.

This Court announced the standard for evaluating harmless error in *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976):

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

> Maryland appellate courts continue to follow the standard established in *Dorsey*. The harmless error standard is highly favorable to the defendant, *Bellamy* [*v. State*, 403 Md. 308, 333, 941 A.2d 1107, 1121 (2008) ], and "the burden is on the State to show that [the error] was harmless beyond a reasonable doubt" and did not influence the outcome of the case. *Denicolis v. State*, 378 Md. 646, 658–59, 837 A.2d 944, 952 (2003).

*Dove*, 415 Md. at 743, 4 A.3d at 985 (citations omitted). Prior to *Dove*, we clarified this standard as applied to Md. Rule 4–326(d) in *Denicolis*, stating that, "[o]nce error is established, the burden is on the State to show that it was harmless beyond a reasonable doubt. The record must affirmatively show that the communication (or response or lack of response) was not prejudicial." *Denicolis*, 378 Md. at 658–59, 837 A.2d at 952 (relying on *Noble* and cases cited therein).

One of the first cases to interpret Md. Rule 4–326(d) is *Allen v. State*, 77 Md.App. 537, 551 A.2d 156 (1989), *cert denied, State v. Allen*, 315 Md. 692, 556 A.2d 674 (1989). The Court of Special Appeals held that "Rule 4–326[d] requires full communication of the contents of a jury communication so that both parties can have input into the response." *Allen*, 77 Md.App. at 545, 551 A.2d at 160. Drawing from cases interpreting Md. Rule 2–521, Md. Rule 4–326's civil analog, the intermediate appellate court stated that "the general rule is

that a *judge shall not answer questions without first inform-*
*ing counsel and then giving counsel a chance to address the*
*court's proposed answer* " and further that *"[b]efore respond-*
*ing to an oral or written communication, the court must*
*notify the parties of the receipt and substance* of the communi-
cation and advise them of the court's intended response,
permitting counsel the opportunity to object or to request
inclusion of some other response." *Allen,* 77 Md.App. at 545–
546, 551 A.2d at 160 (emphasis added) (citations omitted).

We have previously cited *Allen* in emphasizing the require-
ment that counsel be allowed to provide input prior to the
court's response to a jury communication. *See Miles v. State,*
365 Md. 488, 543–544, 781 A.2d 787, 819 (2001) (noting that
"filing of the written communication with the action allows the
parties to inspect the communication for themselves if they so
desire[;]" but cautioning that a "failure to provide an opportu-
nity for inspection in order to develop an appropriate response
may provide the basis for an error."); *see also Graham v.*
*State,* 325 Md. 398, 415, 601 A.2d 131, 139 (1992) (agreeing
with *Allen* that "the spirit of the Rule is to provide relevant
information to those most vitally concerned with the trial.").
In *Stewart v. State,* 334 Md. 213, 638 A.2d 754 (1994), we
relied on *Allen* in holding that Stewart's absence during a
communication between the judge and a juror was not harm-
less error when the judge went to the jury room during
deliberations to talk with a distressed juror. In *Stewart,* the
defendant was precluded "from having 'input' in the judge's
response to the juror's conduct. Stewart may have had other
suggestions as to how the situation could be handled" and
therefore "the mere opportunity for improper influence in
Stewart's absence prejudiced him" despite any innocent mo-
tive of the trial judge. *Stewart,* 334 Md. at 229, 638 A.2d at
761.

In *Denicolis,* we emphasized that Md. Rule 4–326(d)
implements "the Constitutional and common law right of a
criminal defendant to be present at every critical stage of
trial" and emphasized the "fundamental principle" that the

right is "absolute." *Denicolis,* 378 Md. at 656, 837 A.2d at 950. In *Denicolis,* four notes were received from the jury during deliberations. *Denicolis,* 378 Md. at 653, 837 A.2d at 948. The note at issue sought clarification on the definition of solicitation. *Denicolis,* 378 Md. at 653, 837 A.2d at 949. The note was in the record but was not time-stamped, responded to, or even mentioned on the record, and counsel was apparently unaware of the note until after the verdict and sentence had been imposed. *Id.* The intermediate appellate court in *Denicolis* held that since the record was silent as to the note, prejudice could not be proven. *Denicolis,* 378 Md. at 657, 837 A.2d at 951. We reversed that holding, stating that the record was "sufficient to establish non-harmless error" because neither Denicolis nor his attorney were informed of the communication, which pertained to a non-collateral issue, and the State could not prove that the error was "harmless beyond a reasonable doubt." *Denicolis,* 378 Md. at 658–59, 837 A.2d at 951–52. We held that the "record must affirmatively show that the communication (or response or lack of response) was not prejudicial" and that a silent record could not do so. *Denicolis,* 378 Md. at 659, 837 A.2d at 952.[5] In *Denicolis,* we also

---

5. We find it important to clarify the burden placed on the State for proving harmless error. Some cases refer to the need for the record to "affirmatively show" that the error did not cause prejudice. *See Denicolis,* 378 Md. at 656, 837 A.2d at 950; *Noble,* 293 Md. at 563, 446 A.2d at 851; *Midgett,* 216 Md. at 36–37, 139 A.2d at 214. That phrasing, however, does not alter the underlying meaning of the test, which requires the State to prove, beyond a reasonable doubt, that "the error in no way influenced the verdict" and thus did not cause prejudice. *Dorsey,* 276 Md. at 659, 350 A.2d at 678. We point to two cases which help clarify the State's burden of proving that the error had no influence on the verdict, effectively requiring the State to prove the absence of prejudice. *See Noble,* 293 Md. at 573, 446 A.2d at 855 *and La Guardia v. State,* 190 Md. 450, 458–59, 58 A.2d 913, 917 (1948). In those cases, the error in question either benefitted the defendant, as in *Noble,* or had no affect at all on the proceedings because the error pertained to a defendant who did not appeal the case, as in *La Guardia.* Therefore, we held in both *Noble* and *La Guardia* that the record "affirmatively showed" a lack of prejudice, or rather, proved that the error was harmless beyond a reasonable doubt, because there was no possibility that the defendant was harmed by the error. *Noble,* 293 Md. at 571–73, 446 A.2d at 856; *La Guardia,* 190 Md. at 459–60, 58 A.2d at

explained what errors may be deemed non-prejudicial and thus harmless in the context of jury communications, including "those [communications] that clearly do not pertain to the action or to a juror's qualification to continue serving and that are of a purely personal nature." *Denicolis,* 378 Md. at 657, 837 A.2d at 950 (relying on *Midgett,* 216 Md. at 36–37, 139 A.2d at 214, and *Graham,* 325 Md. 398, 415, 601 A.2d 131, 139).

Turning to the case at hand, there are six notes which were not disclosed to counsel during the course of the trial. On remand to the Circuit Court, Judge Sweeney found that "the contents of juror notes 6, 7, 14, 21, 23, and 26 were not disclosed to counsel by the court." Testimony by the trial judge at the evidentiary hearing before Judge Sweeney revealed that the trial judge believed there to be three categories of jury communications. First, those notes dealing with juror comfort or personal problems, which the trial judge reviewed and acted upon without informing counsel. Second, those notes which were given to counsel to review in order to determine whether to conduct an inquiry. Third, those notes the judge considered to be "obvious" and solely for "clarification," which the judge believed did not have to be given to counsel and thus were responded to by the court without input. The jury notes at issue in this case fall under this third category.

Although the State concedes that the trial judge committed error in not disclosing the notes, the State contends that the errors were harmless beyond a reasonable doubt. The State argues that the Court of Special Appeals concluded correctly, beyond a reasonable doubt, that the errors at issue "had no impact whatever on the jury's verdicts." In contrast, the Petitioners argue that the "errors in the present case were hardly harmless. Five of the six notes reflected precise and important substantive concerns the jury had with evidence in the trial. Counsel were entitled under the rule to know that

---

917. Thus, to require the record to "affirmatively show" lack of prejudice is simply to reiterate the State's burden of proving that the error did not influence the verdict.

the jury had asked these questions so that counsel could use this information about the jury's concerns to adjust their trial strategy or ... [to undertake] follow-up questioning of the witness." We agree with the Petitioners that the trial judge's failure to disclose to counsel the origin of the five substantive questions, four of which the judge posed to the witnesses at trial, was not harmless beyond a reasonable doubt.

■ We first turn, however, to juror note 14, which reflected the concern on the part of several jurors with the efficacy of another juror. The note stated:

We the juror[s] feel that juror # 6 should be removed, because of lack of concentration and constantly nodding during this trial. Two men['s] lives are at stake and we believe they deserve a fair trial.

The note was received prior to the start of testimony on July 13. The trial judge did not advise counsel that the court received the note. Rather, because juror # 6 had not yet arrived, the judge discussed with both counsel what should be done about the absent juror. This discussion occurred outside the presence of the jury. The jury was called into open court only briefly in order for the judge to inform them that there would be a delay in the proceedings while the court waited for the absent juror to arrive. When the jury next returned to the courtroom, the court directed an alternate to take the seat of juror # 6 without offering further explanation to the jury.

Relying on *Dorsey*, the Petitioners argue that the State cannot declare beyond a reasonable doubt that the error "in no way influenced the verdict." Petitioners argue that the trial judge's failure to disclose the jury note is not harmless because "it is not really so hard to imagine well-intentioned jurors of the sort who wrote Note 14 wearing down over the course of a long trial and losing their initial willingness to extend the benefit of the doubt to the defendants." The Petitioners conclude that the delay would have prejudiced the defendant by "needlessly trying the jury's patience" and "diminish[ing] the jury's good will to the Petitioners' detriment and thus could have contributed to the guilty verdict."

The State disagrees with Petitioners' characterization that the jurors would have charged the delay to the Petitioners because "all of the discussions between the court and counsel about the tardy juror occurred while the jury was out of the courtroom" and therefore there "was patently no reason for the jurors to blame defense counsel for the delay on this record." Further, the State argues that "[t]he very contents of the note demonstrate[d] that the juror's were indeed ... sympathetic to the defendants' right to a fair trial."

We hold that the failure to disclose juror note 14 was a moot issue, and therefore we need not engage in the harmless error analysis. In this case, Judge Sweeney found that "Juror Number 6's continued participation in the trial had become a moot issue" because, following the note, "the juror was subsequently removed for not showing up, making it unnecessary for the court to deal with the jury's note." Thus, there was an independent ground for excusing the juror (tardiness), and there was an alternate available to sit on the venire. Had the Petitioners not been informed of the note and the juror was allowed to remain on the venire, the case would be quite different. Instead, any possibility for prejudice resulting from the failure to disclose the jury note is moot because the juror was dismissed on an independent ground having nothing to do with the failure to disclose the jury note. Thus, we agree with Judge Sweeney's observation that the continued participation of juror number 6 was a "moot issue," and of no consequence to our harmless error analysis.

█ The remainder of the undisclosed jury notes dealt with substantive issues and cannot be deemed moot or harmless. Jury notes 6 and 7 asked for clarification of the testimony of Ricardo Espinoza Perez, the father of two of the victims, regarding his actions on the afternoon of the murders. There was apparently confusion among the jurors regarding where the witness and other family members stopped on their way home as well as when and what items were purchased. Jury note 6 asked: "When were these things purchased? When everybody got out of the car to carry stuff to the house?"

Jury note 7 stated: "Please I need to know when these things were purchased. If they only made two stops. 1. Bank 2. The babysitters house 3. Home." The notes were received by the court on July 7, within two hours of each other. Judge Sweeney found that "[n]otes 6 and 7 were not disclosed to defense counsel as proposed questions coming from the jury." Instead, the trial judge asked the witness the questions posed on the notes and asked counsel if there was any follow up questioning.

The next note, jury note 21, was submitted to the court during the testimony of Bruce Levine, an engineer for Sprint Corporation. The State presented evidence regarding numerous cell phone calls between the Petitioners and other family members shortly before and after the murders. Mr. Levine testified as an expert regarding the location of the cell phones when various calls were made or received. During Mr. Levine's testimony, the jury submitted note 21, which asked: "When you say call 'received' does that mean the call went through and was answered at the other end?" The trial judge then asked the witness to define the term "received." Mr. Levine explained the term referred to the start of a phone call, but did not indicate whether the call was answered. Judge Sweeney found that the trial judge "did not disclose that it was a jury note that prompted the inquiry."

Jury notes 23 and 26 both concerned the DNA evidence. Jury note 23 was received while Salvatore Bianca was testifying about his micro-vacuum technique. The note asked, "is it possible to vaccum [sic] those types of gloves? If possible did you vaccum [sic] them one and two." [6] The hearing judge determined that defense counsel was not notified of this note and the trial judge, who did not remember receiving the note, did not pose the question contained in the note to the witness. Jury note 26 was received during the testimony of the State's DNA expert, Francis Chiafari. The note asked: "Is it possi-

---

6. The gloves found in Perez's car, which were vacuumed by members of the police trace evidence unit, were labeled number 1 and number 2. DNA was extracted from the blood stains on one glove.

ble for another DNA expert to look at the same reports and have a different opinion?" Following the cross-examination by Canela's attorney, the trial judge asked Mr. Chiafari, "[i]s it possible for another DNA expert to look at the reports that you generated and reach a different conclusion than what you have reached?" Mr. Chiafari responded, "I don't believe that if another DNA expert is provided with the data . . . that they would reach a different conclusion." The trial judge then asked counsel if they had any questions, and counsel for both Petitioners asked a series of follow up questions.

Petitioners argue that each jury note should have been disclosed and that the failure of the court to do so resulted in prejudicial error. Petitioners contend that the reasoning of the Court of Special Appeals

> [c]ompletely dismisses Petitioners' interest in knowing that the question [in each note] was one that was on the minds of one or more jurors, and thus that the issue was of concern to them. It should be obvious that knowing a particular evidentiary matter or issue is of concern to jurors, as opposed to just being of concern to the trial judge, would be very important to a lawyer trying a case.

The Petitioners argue that the Court of Special Appeals's repeated statements that it "fail[ed] to see how appellants were prejudiced," and that it was "impossible" for the court to envision a different result, resulted from an improper harmless error analysis.

Regarding notes 6 and 7, Petitioners contend that the trial judge's "questioning did not clear up the matter satisfactorily." They assert that if "Petitioners or their counsel had known the questions came from a juror, rather than just from the trial judge, they may well have pressed the matter further. . . . [D]efense counsel could have pursued the matter until it was in fact cleared up." Notes 6 and 7 pertained directly to the credibility of the witness, and revealed the jury's concern regarding the testimony. Again with note 20, Petitioners argue that the failure to disclose a note asking for clarification of a witness's testimony is not harmless because

defense counsel may have responded differently to the issue had they known it was a concern of the jury rather than the judge. With regard to notes 23 and 26, which expressed questions concerning the DNA evidence, Petitioners proffered at the evidentiary hearing before Judge Sweeney that had they known the notes came from the jury, counsel would have been more likely to call a defense DNA expert to counter the State's experts. Petitioners further point out that the Court of Special Appeals did not properly apply the harmless error test from *Dorsey* for any note, and argue that the court's analysis "totally dismisses the importance to trial counsel of having information about what the jury is thinking. It substitutes the appellate court's after-the-fact inability to conceive of what might have been done for trial counsel's opportunity to make on-the-spot intuitive decisions about trial strategy."

In response to these concerns, the State argues repeatedly that "Petitioners contention[s] ignore[ ] the fact that the questions posed in the notes were asked of the witness" and that "[i]f defense counsel thought the matter had some additional significance, they were free to pursue the matter further." The State posits that knowing that a note came from a juror would do "nothing to change the defense strategy." The Court of Special Appeals largely agreed with the State's arguments, holding that the failure to disclose the jury notes was harmless error. The court stated, "[w]e fail to see how appellants were prejudiced by the failure to reveal the contents" of the jury notes, and that it is "impossible for us to envision how defense counsel's trial strategy may have differed if they had known the source of the question was a note from the jury." *Canela*, 193 Md.App. at 283, 286, 997 A.2d at 806, 808.

Petitioners finally argue that adopting the intermediate court's burden-shifting analysis would essentially change Md. Rule 4–326(d) to no longer require a trial judge to show counsel jury notes raising questions about evidence, so long as the trial judge asks the question posed in the note. Petitioners rely on *Taylor v. State*, 352 Md. 338, 340–41, 722 A.2d 65 (1998), in which we held that it was not harmless error when

the trial judge answered the jury's questions without notice to, and in the absence of, counsel. In *Taylor*, we stated that although the trial judge's responses were substantively correct, "neither the petitioner nor his counsel had any input, or even any opportunity to have input, in the answers the jury received.... The petitioner might well have asked the court to make the response clearer, or objected to the form of the response." *Taylor*, 352 Md. at 354, 722 A.2d at 73.

Petitioners analogize the present case to *Taylor*, arguing that allowing a trial judge to simply ask the witness a question posed by the jury without notifying counsel, is "almost the same as saying that the failure to share a note with counsel is excusable so long as the judge's reply to the note is correct, a proposition this Court has rightly and soundly rejected [in *Taylor* ]." The State, however, disagrees with Petitioners' reliance on *Taylor*, arguing that the present case is distinguishable because the "trial court did not answer the jury's questions [itself]," as the question was posed to the witnesses and Petitioners had the opportunity to follow up. Thus, the State contends that there was no effect on the jury's verdict because the jury's questions were answered by the witnesses.

We agree with Petitioners that "despite stating correct principles of law, the intermediate appellate court then shifted the burden to Petitioners to show precisely how they were prejudiced by the non-disclosure of the jury notes by delineating what defense counsel would have done differently had the notes been disclosed." The Court of Special Appeals stated several times that it could not find prejudice, and faulted the Petitioners for not affirmatively showing prejudice. *Canela*, 193 Md.App. at 278, 279, 281, 283, 286, 997 A.2d at 803, 804, 805, 806, 808. Despite appearing to apply the *Dorsey* harmless error standard, *Canela*, 193 Md.App. at 274, 997 A.2d at 801, the court did not hold the State to its burden of proving the errors were harmless beyond a reasonable doubt. Simply stating that the court failed to see how the outcome would be different is not the same as the court determining that the error did not influence the verdict. Moreover, it is not the province of an appellate court to speculate as to how the

defense would have reacted to the disclosure of the note in order to ascertain prejudice.

We also agree with Petitioners that expanding the harmless error standard to allow a trial judge to read a jury note, not inform counsel, and ask the question directly to the witness without allowing for counsel's input in advance, would fundamentally alter the rule. As seen in the trial judge's testimony, at the evidentiary hearing, the trial judge believed there to be a category of jury notes, not outlined by the rule or prior cases, which would allow a judge to use his or her discretion in dealing with what the trial judge characterized as "obvious" or "clarifying" questions, rather than follow the dictates of the rule and require input from counsel prior to responding. We have previously cautioned against expanding the harmless error standard, stating that the rule "should be carefully circumscribed" because "[c]ontinued expansion of the harmless error rule will merely encourage prosecutors to attempt to get such [improper evidence] in, since they know that, if they have a strong case, such testimony will not be considered to be reversible error [under the harmless error prejudice requirement]." *Younie v. State*, 272 Md. 233, 248, 322 A.2d 211, 219 (1974) (quoting *People v. Jablonski*, 38 Mich.App. 33, 38–39, 195 N.W.2d 777, 780 (1972)). Instead of protecting an "absolute" and "fundamental" right which is "simple to adhere to in practice," such a change would greatly expand the discretion of the trial judge and allow him or her to determine when the defendant may exercise his or her right to be present for all communications between the court and the jury. To be sure, to create such an exception to the rule of disclosure would invite mischief and thereby undermine the public's trust and confidence in the jury system.

■■■ Applying *Dorsey* and its progeny, we must determine, based on the record, whether the error possibly influenced the verdict in this case. Petitioners are not required to prove what they would have done differently; the burden is on the State to persuade us beyond a reasonable doubt that violations of Rule 4–326 did not influence the verdict to the Petitioners'

prejudice. In this case, although most of the notes in question were asked to the witnesses by the judge,[7] this did not relieve the court of its obligation to inform both parties that the communications originated with the jurors and the substance thereof, pertaining to noncollateral issues, prior to any response by the court. The trial judge's failure to disclose the receipt of the jury notes to counsel deprived counsel of the opportunity to have input into the form and substance of the court's response. We are not persuaded beyond a reasonable doubt that the failure of the trial judge to inform counsel of the receipt and content of the jury notes, numbers 6, 7, 20, 23, and 26, prior to the court's response to the jury's inquiry, did not influence the jury's verdict. Consequently, we shall reverse the judgment of the Court of Special Appeals and direct the intermediate appellate court to reverse the judgment of the Circuit Court, and remand the case to that court for further proceedings.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENTS ENTERED BY THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE CITY.**

HARRELL, MURPHY and ADKINS, JJ., Dissent.

---

7. Unlike the other notes, jury note 23, concerning DNA evidence, was not addressed by the trial judge. The trial judge testified at the evidentiary hearing before Judge Sweeney that he did not remember receiving the note and did not pose the question contained in the note to the witness. The Court of Special Appeals held that note 23 was answered by the witness during direct examination, despite not being asked by the court. *Canela*, 193 Md.App. at 283, 997 A.2d at 806. Even if the question contained in note 23 had been asked of the witness, as the other notes apparently were, this would not correct or ameliorate the prejudice caused by failing to disclose the note to counsel. Therefore, note 23 should be evaluated in accordance with the balance of the notes, which, although addressed by the court, were not disclosed to counsel in advance of the court's response.

78

MURPHY, J., dissenting, in which HARRELL and ADKINS, JJ., join.

There are two reasons why I dissent from the holding that Petitioners are entitled to a new trial. First, assuming that it is appropriate to reach the "merits," I would adopt the analysis of the Court of Special Appeals and affirm the judgment of that Court. More importantly, however, this Court should refuse to address the merits of Petitioners' Rule 4–326(d) argument on the ground that the inaction of Petitioners' trial counsel—*who actually witnessed the alleged violations*—utterly failed to preserve this argument for appellate review.

Judge Sweeney's opinion includes the following factual findings:

Counsel did not expressly agree to any process for handling jury notes or communications. **Counsel did observe at various times that notes were coming from the jury foreperson and being given to the judge for consideration.** Counsel did not observe all jury notes being handed to the clerk since they were busy with other tasks such as examining or cross-examining witnesses, taking notes, or, in the case of the parties with more than one attorney, counsel may have been absent from the courtroom preparing an upcoming witness or handling other matters needing attention outside of the courtroom. **At no time did counsel object to the process by which Judge Mitchell was handling jury notes throughout the course of the trial or prior to the verdict being reached.**

**The clerk was keeping the jury notes as part of the record in the case. At any time, counsel in the case could have reviewed any or all of the jury notes that the judge had returned to the clerk. There is no evidence that any of the counsel asked to review the notes in the possession of the clerk.**

\* \* \*

Jury Note 12, which clearly was fully disclosed on the record, is not at issue as not being disclosed. However, Appellants have placed emphasis on this note with the

suggestion that it was being "hidden" by Judge Mitchell and only revealed when one of the attorneys, Mr. Panteleakis, noticed it at the bench while they were discussing Jury Note 11 and asked Judge Mitchell about it. Mr. Panteleakis stated he received "a stern look" from Judge Mitchell upon making the inquiry.

Judge Mitchell testified that he was not trying to hide any notes, and this is credible to the Court. He was instead going to get to the note when he chose to do so—not on counsel's schedule. He was preempted by counsel's arguably presumptuous inquiry and then fully disclosed Note 12 to counsel. **This incident does show that all defense counsel were aware at that juncture that at least some jury notes were being handled in a fashion that did not totally suit them.**

(Emphasis supplied).

As Judge Sweeney noted, at the point in time when Jury Notes 11 and 12 were discussed at a bench conference, Petitioners' trial counsel were on actual notice of how Judge Mitchell had been handling jury notes that were being (1) written in the jury box, and (2) passed to him *in open court.* At this point in the trial, Petitioners' trial counsel had a full and fair opportunity to make whatever objections they wished to make. It is clear, however, that Petitioners' trial counsel neither made any objection nor requested (1) to review any of the notes that had already come out of the jury box, or (2) the opportunity to review, from that point forward, any note that would come out of the jury box during the remainder of the trial. Under these circumstances, this Court should hold that Petitioners' right to review notes coming out of the jury box was waived.

In *Glickman v. State,* 190 Md. 516, 60 A.2d 216 (1948), this Court stated:

This Court has recently held in *Conley v. Warden of the Maryland House of Correction,* 190 Md. 750, 59 A.2d 684 [ (1948) ], as follows: "... **'Where in a State criminal trial the defendant is represented by competent and experi-**

enced counsel, even constitutional rights known or presumed to be known to counsel to exist must be held to have been waived if not made at all or * * * inadequately presented.' *United States ex rel. Jackson v. Brady*, 47 F.Supp. 362, 367 [ (1942) ], *aff.* 4 Cir., 133 F.2d 476, *cert. den.* 319 U.S. 746, 63 S.Ct. 1029, 87 L.Ed. 1702, *rehearing denied* 319 U.S. 784, 63 S.Ct. 1315, 87 L.Ed. 1727 [ (1943) ]." Had the objection been seasonably made in the case at bar, the omission could have been readily corrected.

*Id.* at 526–27, 60 A.2d at 220–21. (Emphasis supplied). Those statements are fully applicable to the case at bar. This Court should not reverse Petitioners' convictions on the ground that the trial judge—*in open court*—employed a procedure that "could have been readily corrected" at the request of Petitioners' counsel.

Judges HARRELL and ADKINS have authorized me to state that they join this dissenting opinion.